Adam P. Bailey (CA Bar No. 278208)
Geoffrey D. Strommer (*pro hac vice* application forthcoming)
Caleb J. Norris (*pro hac vice* application forthcoming)
HOBBS, STRAUS, DEAN & WALKER, LLP
1903 21st Street, 3rd Floor
Sacramento, CA  95811
Phone: 916-442-9444
Fax: 916-442-8344
E-mail: abailey@hobbsstraus.com
        gstrommer@hobbsstraus.com
        cnorris@hobbsstraus.com

Attorneys for Plaintiff Susanville Indian Rancheria.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANVILLE INDIAN RANCHERIA,<br><br>Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary, U.S. Department of Health & Human Services; ROSELYN TSO, in her official capacity as Director, Indian Health Service; and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT** |

**COMPLAINT**

**JURISDICTION**

1.      This controversy arises under agreements between the United States and the

Susanville Indian Rancheria (Rancheria) for the operation of federal health programs for Indians

carried out pursuant to the Indian Self-Determination and Education Assistance Act (ISDEAA),

Pub. L. No. 93-638 (codified as amended at 25 U.S.C. §§ 5301−5399).  This Court has subject

COMPLAINT                                                          1

matter jurisdiction under the Contract Disputes Act, 41 U.S.C. § 7104(b), and the ISDEAA, 25 U.S.C. § 5331(a), which provides original jurisdiction to United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts.

2. In a series of five letters dated February 14, 2023, the Rancheria requested an Indian Health Service (IHS) contracting officer's decisions on claims for underpaid contract support costs (CSC) for calendar years (CYs) 2017–2021. In a letter dated January 11, 2024, the IHS denied the Rancheria's claims. The Rancheria has filed this action within 12 months of receipt of the IHS decisions, as required by the Contract Disputes Act. 41 U.S.C. § 7104(b)(3).

3. This Court has jurisdiction to review the IHS's decision on the CYs 2017–2021 claims under the Contract Disputes Act and Section 110 of the ISDEAA. 41 U.S.C. § 7104(b); 25 U.S.C. §§ 5331(a) & (d).

**VENUE**

4. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district and because all Defendants are subject to this Court's exercise of personal jurisdiction.

**INTRODUCTION AND SUMMARY**

Plaintiff, the Rancheria, for its cause of action against the Defendants named above, alleges as follows:

5. This is a suit against the United States for breach of contract and statute by the Indian Health Service, an agency in the U.S. Department of Health and Human Services (HHS). Plaintiff, the Rancheria, seeks money damages under the Contract Disputes Act, 41 U.S.C. §§ 7101−7109, and the ISDEAA, 25 U.S.C. § 5331(a), based on Defendant Secretary of Health and

Human Services Xavier Becerra's (Secretary) violation of the Rancheria's contractual and statutory right to the payment for full funding of CSC for a compact and funding agreement entered into under the ISDEAA.

6. The Supreme Court has held that the United States' failure to pay the full CSC associated with its ISDEAA agreements constitutes a violation of federal law and breach of contract. *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 185 (2012) ("[W]e hold that the Government must pay each tribe's contract support costs in full."); *Cherokee Nation v. Leavitt*, 543 U.S. 631, 634 (2005) ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

7. The Supreme Court has held that the United States' failure to pay CSC on expenditures of third-party revenues in support of contracted programs, services, functions, and activities is a violation of the ISDEAA. *Becerra v. San Carlos Apache Tribe*, 602 U.S. 222 at 242–243 (2024).

8. Defendants breached the Rancheria's agreements and violated the ISDEAA by failing to pay the full CSC owed to the Rancheria under the statute and the Rancheria's Compact and Funding Agreement for CYs 2017–2021.

9. Defendants paid only a portion of the CSC owed under the Rancheria's contract, due to their misinterpretation of the ISDEAA. Specifically, the IHS failed to pay CSC associated with the portion of the Rancheria's health care program funded with third-party revenues—payments from Medicare, Medicaid, private insurers, and others.

10. In a series of five letters dated February 14, 2023, the Rancheria requested an IHS contracting officer's decision on claims for underpaid CSC for CYs 2017–2021. In a letter dated January 11, 2024, the IHS denied the Rancheria's claims. Letter from Darrell LaRoche, Deputy

COMPLAINT                                      3

Dir. for Mgmt. Operations, Indian Health Serv., to Mr. Arian Hart, Chairman, Susanville Indian Rancheria, at 1 (Jan. 11, 2024) (hereinafter "Decision Letter").

11. This action challenges the IHS's denial of the Rancheria's Contract Disputes Act claims for CYs 2017–2021, and seeks damages and other relief.

## PARTIES

12. Plaintiff, the Rancheria, is authorized to deliver health care services under the terms of a funding agreement between the Susanville Indian Rancheria and HHS. The Rancheria is an "Indian Tribe" eligible to contract and compact with the IHS under the ISDEAA. *See* 25 U.S.C. § 5304(e). The Rancheria carries out a range of health care programs, services, functions, and activities (PSFAs) at the Lassen Indian Health Center in Susanville, California.

13. Defendant Xavier Becerra, the Secretary of HHS, has overall responsibility for carrying out all the functions, responsibilities, authorities and duties of the U.S. Department of Health and Human Services, including oversight of the IHS, an agency within the Department. He is sued in his official capacity.

14. Defendant Roselyn Tso is the Director of the IHS, the agency charged by law with the responsibility for implementing the ISDEAA and other health laws benefiting American Indians and Alaska Natives, on behalf of the United States. 25 U.S.C. § 1661(c)(3). She is sued in her official capacity.

15. Defendant United States is a party to the Rancheria's ISDEAA agreements. *See* Compact Between Susanville Indian Rancheria and the United States of America (Compact); CY 2012 Funding Agreement By and Between the Susanville Indian Rancheria and the Secretary of the Department of Health And Human Services (Funding Agreement).

COMPLAINT 4

## STATUTORY BACKGROUND: THE ISDEAA

16. The Rancheria provides health care services to eligible American Indians and Alaska Natives, and other eligible beneficiaries pursuant to its Compact and Funding Agreement authorized by Title V of the ISDEAA, 25 U.S.C. §§ 5381−5399.

17. The Funding Agreement in effect in CYs 2017–2021 had an initial term of January 1, 2012 through December 31, 2012, but was to remain in effect until a successor Funding Agreement was executed. Funding Agreement § 16; Compact art. II, § 12. The Rancheria and the IHS did not execute a new funding agreement until 2022, so the 2012 Funding Agreement was in effect in CYs 2017–2021.

18. The ISDEAA authorizes the Rancheria, other tribes, and tribal organizations to assume responsibility to provide PSFAs that the Secretary would otherwise be obligated to provide. In return, the Secretary must provide the Rancheria with two types of funding under Section 106(a) of the ISDEAA: (1) "program" funds, the amount the Secretary would have provided for the PSFAs had the IHS retained responsibility for them, *see* 25 U.S.C. § 5325(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2) "contract support costs," the reasonable administrative and overhead costs associated with carrying out the PSFAs, *see* 25 U.S.C. §§ 5325(a)(2) & (3); *id.* § 5396(a) (mandatory application of section 5325(a) through (k) to Title V agreements).

19. There are three types of CSC: (1) pre-award and start-up costs, which are one-time costs to plan, prepare for, and assume operation of new or expanded PSFAs, *see* 25 U.S.C. §§ 5325(a)(5) & (6); (2) indirect CSC, which are costs incurred for a common or joint purpose benefiting more than one PSFA, such as administrative and overhead costs, *see* 25 U.S.C. § 5325(a)(2); and (3) direct CSC, which are expenses directly attributable to a certain PSFA but

not captured in either the indirect cost pool or the 106(a)(1) amount, such as workers' compensation insurance or other expenses the Secretary would not have incurred because, for example, the Government is self-insured, *see* 25 U.S.C. § 5325(a)(3)(A).  This action involves both direct and indirect CSC.

20. The ISDEAA requires that, upon approval of the contract, "the Secretary <u>shall add to the contract the full amount of funds</u> to which the contractor is entitled [under section 106(a) of the ISDEAA]," including CSC.  25 U.S.C. § 5325(g) (emphasis added); *see also Cherokee Nation*, 543 U.S. at 634 ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

21. The Supreme Court has held that the ISDEAA requires the IHS to pay CSC that Tribes incur when they expend third-party revenue to further the PSFAs of the contract or compact.  *Becerra*, 602 U.S. at 238–239.

## GENERAL ALLEGATIONS

*Program Income*

22. When the IHS provides direct services to eligible beneficiaries, the PSFAs are funded not only by funds appropriated by Congress, but also by third-party revenues billed to and collected from Medicare, Medicaid, the Children's Health Insurance Program, private insurers, and others.  *See generally* 42 U.S.C. §§ 1395 *et seq*., 1396 *et seq*., 1397aa *et seq*.  Each year in its budget request to Congress, the IHS estimates how much third-party revenue will be collected and available to spend on services, based on past collections.  *See, e.g.*, Dep't of Health & Hum. Servs., *Indian Health Service FY 2021 Justification of Estimates for Appropriations Committees*, at CJ-188 (reporting that in Fiscal Year (FY) 2020, the IHS collected an estimated

COMPLAINT 6

$1.194 billion from third-party insurers).  "Public and private collections represent a significant portion of the IHS and Tribal health care delivery budgets"—often 60% or more. *Id.*

23. By the same token, the Rancheria, when carrying out PSFAs under its Compact and Funding Agreement, is legally and contractually obligated to collect third-party revenues and use them to provide further services within the scope of its agreements with the IHS.  Title V of the ISDEAA mandates as follows:

> (j) PROGRAM INCOME.--All Medicare, Medicaid, or other program income earned by an Indian tribe shall be treated as supplemental funding to that negotiated in the funding agreement.  The Indian tribe may retain all such income and expend such funds in the current year or in future years except to the extent that the Indian Health Care Improvement Act (25 U.S.C. 1601 et seq.) provides otherwise for Medicare and Medicaid receipts.  Such funds shall not result in any offset or reduction in the amount of funds the Indian tribe is authorized to receive under its funding agreement in the year the program income is received or for any subsequent fiscal year.

25 U.S.C. § 5388(j).  Thus, by law, these third-party revenue funds are part of the federal program carried out by the Rancheria under its ISDEAA agreements. *See Becerra,* 602 U.S. at 229.

24. Similarly, the Compact provides as follows:

> The [Rancheria] has elected to directly collect Medicare and Medicaid payments as provided in 25 U.S.C. § 1641, as amended. The [Rancheria] is obligated and entitled to directly collect and retain reimbursement for Medicare and Medicaid and any other third party payors for services provided under this Agreement in accordance with section 401 of the Indian Health Care Improvement Act as amended at 25 U.S.C. § 1641 and Section 206 of such Act, 25 U.S.C §1621e, as amended… All Medicare, Medicaid or other program income earned by the [Rancheria] shall be treated as additional supplemental funding to that negotiated in the FA and the [Rancheria] may retain all such income, including Medicare/Medicaid, and expend such funds in the current year or in future years…

Compact art. III, §§ 6(a) & (b).

25. Any third-party revenues collected by the Rancheria are designated by statute and IHS regulations as "program income" that must be, and is, expended in support of PSFAs

COMPLAINT                                7

included in the Rancheria's Funding Agreement with the IHS.  *Becerra,* 602 U.S. at 228; *see also* 25 U.S.C. § 5388(j) ("All Medicare, Medicaid, or other program income earned by an Indian tribe shall be treated as supplemental funding to that negotiated in the funding agreement."); 42 C.F.R. § 137.110 ("All Medicare, Medicaid, or other program income earned by a Self-Governance Tribe shall be treated as supplemental funding to that negotiated in the funding agreement.").

26. The Indian Health Manual (IHM) acknowledges that a tribe's "Total Health Care Program" includes the portion funded by "collections from Medicare, Medicaid, and private insurance," not just IHS appropriations.  IHM § 6-3.1(G)(34), https://www.ihs.gov/ihm/pc/part-6/p6c3/.  Therefore, that portion must be included when calculating the amount of CSC owed to the tribe.  *Id*. §§ 6-3.2(E)(1)(a)(i), (E)(1)(b).

*Calculation of Contract Support Costs*

27. As noted above, the ISDEAA requires the IHS to pay full CSC, *Ramah*, 567 U.S. at 185; *Cherokee Nation*, 543 U.S. at 634, including on expenditures of third-party revenues, *Becerra*, 602 U.S. at 238–239.  For the Rancheria, as for most tribes, the full amount of indirect CSC is determined by multiplying a negotiated indirect cost rate by the amount of the direct cost base.  *See* 25 U.S.C. §§ 5325(c)(3), (4) & (5) (requiring the Secretary to report annually on tribes' indirect cost rates and direct cost bases); *Cherokee Nation*, 543 U.S. at 635 ("Most contract support costs are indirect costs 'generally calculated by applying an "indirect cost rate" to the amount of funds otherwise payable to the Tribe.'")

28. The Rancheria's CY 2017 indirect cost rate agreement with HHS's Cost Allocation Services (CAS), which applies government-wide, calls for an indirect cost rate of

45.56% on a direct cost base comprised of "[t]otal direct costs excluding capital expenditures." Nonprofit Rate Agreement dated August 8, 2017.

29. The Rancheria's CY 2018 indirect cost rate agreement with CAS, which applies government-wide, calls for an indirect cost rate of 44.07% on a direct cost base comprised of "[t]otal direct costs excluding capital expenditures." Nonprofit Rate Agreement dated July 30, 2018.

30. The Rancheria's CY 2019 indirect cost rate agreement with CAS, which applies government-wide, calls for an indirect cost rate of 42.02% on a direct cost base comprised of "[t]otal direct costs excluding capital expenditures." Nonprofit Rate Agreement dated June 20, 2019.

31. The Rancheria's CY 2020 indirect cost rate agreement with CAS, which applies government-wide, calls for an indirect cost rate of 38.93% on a direct cost base comprised of "[t]otal direct costs excluding capital expenditures." Nonprofit Rate Agreement dated October 2, 2019.

32. The Rancheria's CY 2021 indirect cost rate agreement with CAS, which applies government-wide, calls for an indirect cost rate of 45.17% on a direct cost base comprised of "[t]otal direct costs excluding capital expenditures." Nonprofit Rate Agreement dated September 15, 2021.

33. The IHS accepts the Rancheria's rates, as it must. The present controversy is over the amount of the direct cost base in each year. Specifically, the issue is whether third-party revenues expended to provide services within the scope of the Rancheria's ISDEAA agreements are part of the direct cost base and therefore generate CSC requirements. The IHS argues, in its decision denying the Rancheria's claims, that only the Secretarial amount generates CSC, and

COMPLAINT    9

the Secretarial amount is limited to funding for PSFAs transferred under the ISDEAA agreement. Decision Letter at 4−5.  But the Supreme Court has since affirmed that expenditures of third-party revenues to carry out PSFAs included in an ISDEAA agreement are part of the "Federal program" that generates CSC under 25 U.S.C. § 5325(a)(3).  *Becerra*, 602 U.S. at 233–236.

34. Yet in CYs 2017–2021, IHS paid no CSC in support of health care services funded by third-party revenues, giving rise to the damages described next.

35. As documented in the Rancheria's CY 2017 audited financial records, the Rancheria expended $528,882 in third-party revenues on the IHS-funded health program in CY 2017.  Applying the Rancheria's negotiated indirect cost rate of 45.56% to this base yields an indirect CSC requirement of $240,959.  IHS paid no CSC in support of those funds, giving rise to a claim for unpaid indirect CSC in the amount of $240,959.

36. As documented in the Rancheria's CY 2018 audited financial records, the Rancheria expended $277,173 in third-party revenues on the IHS-funded health program in CY 2018.  Applying the Rancheria's negotiated indirect cost rate of 44.07% to this base yields an indirect CSC requirement of $122,150.  IHS paid no CSC in support of those funds, giving rise to a claim for unpaid indirect CSC in the amount of $122,150.

37. As documented in the Rancheria's CY 2019 audited financial records, the Rancheria expended $218,411 in third-party revenues on the IHS-funded health program in CY 2019.  Applying the Rancheria's negotiated indirect cost rate of 42.02% to this base yields an indirect CSC requirement of $92,776.  IHS paid no CSC in support of those funds, giving rise to a claim for unpaid indirect CSC in the amount of $92,776.

38. As documented in the Rancheria's CY 2020 audited financial records, the Rancheria expended $269,639 in third-party revenues on the IHS-funded health program in CY

2020.  Applying the Rancheria's negotiated indirect cost rate of 38.93% to this base yields an indirect CSC requirement of $104,970.  IHS paid no CSC in support of those funds, giving rise to a claim for unpaid indirect CSC in the amount of $104,970.

39.  As documented in the Rancheria's CY 2021 audited financial records, the Rancheria expended $1,057,762 in third-party revenues on the IHS-funded health program in CY 2021.  Applying the Rancheria's negotiated indirect cost rate of 45.17% to this base yields an indirect CSC requirement of $477,791.  IHS paid no CSC in support of those funds, giving rise to a claim for unpaid indirect CSC in the amount of $477,791.

*Procedural History of the Claims*

40.  In a series of five letters dated February 14, 2023, the Rancheria requested IHS contracting officer's decisions on the claims for unpaid CSC in CYs 2017–2021.

41.  The IHS denied the Rancheria's claims in a letter dated January 11, 2024.  In the Decision Letter, the IHS argued that the "Federal program" amount generating CSC needs is limited to appropriated funds transferred in the Funding Agreement and may not include third-party collections.

42.  The Rancheria filed this action within twelve months of receipt of the IHS decision, as authorized by the Contract Disputes Act.  41 U.S.C. § 7104(b)(3).

*Rule of Construction*

43.  The ISDEAA incorporates its own rule of interpretation: "Each provision of [Title V] and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe."  25 U.S.C. § 5392(f).  Applying a similar interpretive rule from Title I,

COMPLAINT                                11

the Supreme Court has said that the government "must demonstrate that its reading [of the ISDEAA] is clearly required by the statutory language." *Ramah*, 567 U.S. at 194.

## COUNT I – Violation of the ISDEAA

44. All prior allegations are adopted by reference as if fully set forth here.

45. The ISDEAA requires the IHS to pay the Rancheria's contract support costs in full. 25 U.S.C. § 5325(a) & (g); *Ramah*, 567 U.S. at 185.

46. The IHS failed to pay indirect CSC on that portion of the Rancheria's health care program funded by third-party revenues expended to provide services under the Funding Agreement.

47. In doing so, the IHS violated the ISDEAA. *Becerra*, 602 U.S. at 242–243.

48. As a result of the IHS's violation of the ISDEAA, the Rancheria sustained damages totaling $1,038,646.

49. Defendants are liable to the Rancheria, under 25 U.S.C. § 5331(a), for total damages of $1,038,646.

## COUNT II – Breach of Contract

50. All prior allegations are adopted by reference as if fully set forth here.

51. The Compact and Funding Agreement incorporate the statutory duty to fully fund CSC. *See, e.g.*, Funding Agreement § 5 (referencing 25 U.S.C. §§ 458aaa-7(c), 458aaa-18(b), and 450j-1, which have since been recodified as 25 U.S.C. §§ 5388(c), 5399(b), and 5325, respectively). This duty was affirmed by the Supreme Court in *Becerra*, *Ramah* and *Cherokee Nation*, *supra*.

52. By failing to pay indirect CSC on the third-party revenue-funded portion of the Rancheria health care program, the IHS breached its contractual agreements with the Rancheria.

53. As a result of the IHS's breach of its contractual agreements, the Rancheria sustained damages totaling $240,959 in CY 2017.

54. As a result of the IHS's breach of its contractual agreements, the Rancheria sustained damages totaling $122,150 in CY 2018.

55. As a result of the IHS's breach of its contractual agreements, the Rancheria sustained damages totaling $92,776 in CY 2019.

56. As a result of the IHS's breach of its contractual agreements, the Rancheria sustained damages totaling $104,970 in CY 2020.

57. As a result of the IHS's breach of its contractual agreements, the Rancheria sustained damages totaling $477,791 in CY 2021.

58. The Rancheria therefore seeks an award of damages in the total amount of $1,048,646 under the ISDEAA, 25 U.S.C. §§ 5331(a) & (d), and the Contract Disputes Act, 41 U.S.C. §§ 7101-7109.

**PRAYER FOR RELIEF**

59. The Rancheria respectfully requests the Court grant relief as follows:

   A. Award the Rancheria $1,038,646 in damages for unpaid indirect CSC;

   B. Award such other damages as may be proven in this action;

   C. Order the payment of interest on this claim pursuant to the Contract Disputes Act, 41 U.S.C. § 7109;

   D. Award the Tribe its attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; 25 U.S.C. § 5331(c), and other applicable law; and

E. Grant the Rancheria such other and further relief as the Court deems appropriate.

DATED: January 9, 2025.

Respectfully submitted,

By: /s/ Adam P. Bailey
Adam P. Bailey (CA Bar No. 278208)
HOBBS, STRAUS, DEAN & WALKER, LLP
1903 21st Street, 3rd Floor
Sacramento, CA 95811
Phone: 916-442-9444
Fax: 916-442-8344
E-mail: abailey@hobbsstraus.com

Geoffrey D. Strommer (*pro hac vice* application forthcoming)
Caleb J. Norris (*pro hac vice* application forthcoming)
HOBBS, STRAUS, DEAN & WALKER, LLP
215 SW Washington Street, Suite 200
Portland, OR 97204
Telephone: 503-242-1745
Fax: 503-242-1072
E-mail: gstrommer@hobbsstraus.com
cnorris@hobbsstraus.com